| | |
|---|---|
| ANGEL GRANGER AND CASEY DIXON DESCANT | : 12TH JUDICIAL DISTRICT COURT |
| | : FILE NO. |
| VERSUS    20094052 | : DOCKET NO. _____ |
| | : AVOYELLES PARISH, LOUISIANA |
| AARON'S, INC. | : |

FILED AND RECORDED
2009 AUG 28 A 8: 32

*************************************************************************

### PETITION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, ANGEL GRANGER ("Granger") and CASEY DIXON DESCANT ("Descant"), who for complaint against Defendant, AARON'S, INC., respectfully allege as follows:

1.

Plaintiff Granger is an individual of the full age of majority, and a domiciliary and resident of Avoyelles Parish, Louisiana.

2.

Plaintiff Descant is an individual of the full age of majority, and a domiciliary and resident of Avoyelles Parish, Louisiana.

3.

Upon information and belief, Defendant Aaron's, Inc. is a foreign corporation that is currently operating and engaging in interstate commerce in Avoyelles Parish, Louisiana. Aaron's, Inc. owns and operates a business located in Mansura, Louisiana that engages in the sale and rental of furniture, appliances and electronics.

4.

This matter includes sexual harassment and constructive discharge claims brought by Plaintiffs pursuant to Title VII of the 1964 Civil Rights Act, as amended and supplemented, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.*

5.

Aaron's, Inc. is engaged in an industry affecting commerce and has employed fifteen (15) or more employees at all times pertinent herein.

6.

Upon information and belief, Aaron's, Inc. employs and has employed more than fifty (50) employees at all times pertinent herein.

7.

Plaintiff Granger and Plaintiff Descant are both female.





8.

Plaintiff Descant began working as a customer service representative for Aaron's, Inc. in its Mansura location from or about March 8, 2007 until she was forced to resign her employment on or about June 30, 2007.

9.

Plaintiff Granger began working as a customer service representative for Aaron's, Inc. in its Mansura location from or about July 7, 2007 until she was forced to resign her employment on or about September 23, 2007.

10.

At all times pertinent herein, Kennard Williams ("Williams"), was the Store Manager for Aaron's Mansura location. Williams, male, was Granger's and Descant's direct supervisor and the supervisor of all other employees at the Mansura location. Williams had the authority to undertake or recommend tangible employment decisions affecting Granger and Descant and the authority to direct their daily work activities.

11.

Williams engaged in a pattern of deliberate, repeated sexual harassment of both Granger and Descant shortly after each began working for Aaron's until such time each were compelled and had no choice but to resign their employment.

12.

Granger and Descant were subjected to the unwanted and unwelcome harassment of Williams, which conduct was based on their sex, female. Granger's and Descant's reactions to the harassment complained of affected tangible aspects of their terms, conditions and privileges of employment.

13.

Aaron's, Inc. is vicariously liable for the sexually harassing conduct of its supervisors, and in particular, Williams.

14.

Shortly after Plaintiff Descant began working at the Aaron's in Mansura, Williams began pretending to accidentally brush up and graze against Descant, and particularly on her buttocks, on a number of occasions. His physical advances and batteries progressed to the point where Williams would slip his hands up Descant's skirts to her thighs until she would have to get up

and walk away. Williams also grabbed Descant's buttocks and reached beneath Descant's blouse and grabbed her breasts.

15.

Williams would often tell Descant that he liked the way her butt looked in her pants. When Descant wore skirts to work, Williams told her that it was a "turn on" for him. Williams would often accuse Descant of staring at his penis while drawing attention and pointing to his groin area.

16.

Williams told Descant a few times that he knew how to unlock the bathroom door at work from the outside. Williams actually unlocked the bathroom door while Descant was inside what she thought was a locked bathroom.

17.

Descant received an unwanted midnight phone call from Williams one night when he was drinking. When Descant was out on medical leave, Williams would constantly call Descant at home to complain about another female employee at Aaron's.

18.

Williams told Descant multiple times that she reminded Williams of his wife, that Descant was attractive, and that Williams likes women with curves. Williams propositioned Descant for sex on multiple occasions, which she refused each time. Williams told Descant more than once that they could have a sexual relationship with no obligations or disclosures to their significant others.

19.

On several occasions Williams asked Descant for a kiss at the workplace. Williams often would plead for a kiss when Descant refused his advances. After Descant would say no, Williams would tell Descant, "I'm not your friend no more."

20.

Williams would often take Descant's and another female employee's cell phones without their permission and go through their phone numbers, read their text messages and look through their pictures. Williams would often forward personal items and information from Descant's and the other employee's cell phones to his personal cell phone without their permission and/or Williams would forward items to their cell phones from his personal cell phone.

21.

Williams would often tell Descant about his frequent visits to strip clubs, including visits Williams took with Damon Knapp, his supervisor at Aaron's. Williams would talk about various women that he had sexual relations with to Descant. Williams would discuss the purported sexual activities of another Aaron's female employee in front of Descant. Descant did not desire to be part of any such sexually-charged conversations.

22.

On several occasions at work Williams asked Descant to sit on his lap. Descant would refuse the advances and remind Williams that he had a wife and children and that Descant was engaged. Williams often told Descant that it did not matter and that no one else had to know.

23.

Descant discussed Williams' attempts to kiss her with Jasmine Furlow, an Aaron's Sales Manager. Furlow indicated that Williams has tried the same conduct with her and simply told Descant that Descant herself should put a stop to it. Williams found out about Descant's conversation with Furlow and made a joke of it to Descant, telling her in a joking manner "You better put an end to this right now."

24.

Although Descant wanted to report Williams for sexual harassment, Williams told her in the past that someone tried to report him for harassment before and she wound up losing her job while Williams kept his job. Descant was fearful of retaliation if she filed a report of harassment against Williams.

25.

After returning one day from a supervisor's conference, Williams mentioned to Descant that the conference "harped on sexual harassment" and he was told that it was not considered harassment unless the person being victimized acknowledged there was a problem. Descant told Williams, "There is a problem. Consider yourself acknowledged."

26.

After Descant made the statement to Williams, Williams began making comments to Descant that she was not fun anymore and that she was "so serious." Williams also berated and cursed Descant upon her return to the store from helping a customer with a problem. Williams'

treatment of Descant changed for the worse after Williams' statement above. Descant's work environment became so unbearable that she had no choice but to resign.

27.

During Plaintiff Granger's employment with Aaron's, Inc., Williams, who is married, would often tell Granger about his "girlfriends" and how he would give a girlfriend in particular money to pay for bills and take care of her child. Williams told Granger that he was the lady's "sugar daddy."

28.

Williams would often describe his visits to strip clubs to Granger, including visits Williams took to strip clubs with his own supervisor, Damon Knapp. Williams would talk about various women with whom he had sexual relations to Descant. Williams would discuss the purported sexual activities of another Aaron's female employee in front of Descant. Granger did not desire to be part of any such sexually-charged conversations.

29.

Williams would often make sexual comments to Granger about her body and tell her that her butt looked good in her pants. He would ask to touch Granger's buttocks, to which she would refuse. Williams eventually began touching Granger inappropriately, which touching later turned into groping and grabbing. All such comments and actions were unwelcomed by Granger.

30.

Williams thereafter began to pass Granger and run his hand over her buttocks. Williams would tell Granger that she was sexy, and would often ask her if she was a "freak," meaning a "freak" in a sexual manner. Williams would often ask Granger if she would sleep with him for money. Williams would often ask Granger to go to strip clubs and to dinner with him. Granger always refused Williams' requests.

31.

Williams would ask Granger if she would ever consider sleeping with a "black man." Williams is an African-American.

32.

Williams told Granger that he knew how to unlock the bathroom door at work from the outside. Williams actually unlocked the bathroom door while Granger was inside what she thought was a locked bathroom.

33.

Williams would often take Granger's cell phone without her permission and look through her messages and pictures. Williams would often forward items from Granger's phone to his phone without her permission, including personal messages Granger received from her boyfriend.

34.

Williams would often call Granger degrading names such as "cum licker." Williams would often ask Granger if he could "lick it." Williams would often walk behind Granger and tell her she has a "sexy ass" and he would ask Granger to "twist it."

35.

Williams indicated to Granger that if she had a sexual relationship with him, there would be no strings attached and he could help her financially. Williams separately promised Granger that he could make her a sales manager at Aaron's.

36.

One day at the workplace, Williams pulled Granger's shirt open with his hand and looked down her shirt and at her breasts.

37.

That day, Granger reported Williams' action in pulling open her shirt to Luke Weatherford, another Aaron's manager. Weatherford responded to Granger that Williams had been in trouble with Aaron's before for a similar incident and that Williams revealed his "private" to another female employee who worked at Aaron's prior to Granger.

38.

On another occasion, Weatherford also informed Granger that Williams and another female employee once had sex in the bathroom at Aaron's Mansura location. The employee was thereafter transferred to another location while Williams remained at the Mansura location.

39.

One day at work, Williams made Granger stick her arms out so he could take a picture of her. Williams told Granger he was sending the picture to his wife to show her how Granger was skinny.

40.

While in front of Granger and laughing at Granger, Williams made a comment to Don Normand, an Aaron's employee, male, that he should "look how small her [Granger's] boobs are."

41.

After teasing, groping and/or harassing Granger, Williams would often ask her if she wanted the number to the company's harassment hotline or to Damon Knapp, his supervisor. Mr. Knapp is the same supervisor with whom Williams told Granger he frequented strip clubs, and is a personal friend of Williams.

42.

After Granger repeatedly denied Williams' requests to be his "girlfriend," Williams began asking Granger if she could "hook him up" with any of her friends generally, and certain of Granger's friends in particular. After Granger denied these requests as well, Williams took Granger's cell phone without her permission and obtained the phone numbers of a number of Granger's female friends.

43.

Without Granger's knowledge, Williams went so far as to call two of Granger's friends from the numbers Williams misappropriated from Granger's cell phone. Williams asked both of Granger's female friends if they would go out on a date with him. Williams asked one of the women, who was also applying for a job at Aaron's, Inc. at the time, if he could be her "baby's daddy."

44.

Williams asked Granger whether sleeping with a supervisor was a fantasy of hers, and told Granger about an affair he had with a supervisor of his in the military.

45.

On a number of occasions Williams attempted to call Granger on her cell phone at inappropriate hours during the night and weekends, sometimes leaving voicemails for Granger.

46.

By the time Granger felt compelled to take a leave and resign her employment, Williams' touching of Granger had turned into groping and grabbing, and he was touching Granger in an inappropriate manner or making inappropriate sexual comments to her on an almost daily basis.

47.

Williams has subjected other female employees at Aaron's, Inc. to similar harassing conduct as that complained of herein. Aaron's has continually refused to take appropriate actions to prevent Williams from engaging in further acts of discrimination and harassment in the workplace.

48.

After Granger continually rebuffed and rejected Williams' advances and sexual propositions, Williams began treating Williams in a negative manner, treated Granger like a child in front of others and berated Granger in front of her co-workers in a company meeting. Williams gave Granger one or more negative write-ups in retaliation for Granger complaining of his conduct. Williams required that Granger carry a heavy television when there were other available employees more suited to perform the task.

49.

Williams told Granger that another female employee tried to report him for sexual harassment in the past, and that the female employee wound up losing her job while Williams kept his job. Granger did not feel that she could go to Damon Knapp, Williams' supervisor, with her complaints of Williams' harassing conduct in light of the nature of the personal relationship and friendship between Knapp and Williams.

50.

After Granger could no longer take William's harassment and obscene conduct, Granger called Aaron's "harassment hotline" and left a message. About a week after Granger lodged a complaint against Williams, representatives of Aaron's called Granger to tell her that they found no evidence of Granger's complaints. Granger was told that she could return to work, but only under the supervision of Williams. The only other option given to Granger was for her to transfer to another store in another town and parish, away from her family and boyfriend. At this point Granger had no option but to resign her employment with Aaron's, Inc.

51.

Williams' actions were physically threatening, humiliating, degrading and offensive to Plaintiffs. His actions and comments, together with Aaron's, Inc.'s failure to address improper conduct in the workplace, have unreasonably interfered with Plaintiffs' work performance and/or undermined Plaintiffs' workplace competence.

52.

Aaron's, Inc.'s actions and omissions caused Plaintiffs severe emotional distress, humiliation, embarrassment, anxiety and/or depression.

53.

Plaintiffs timely filed complaints of employment discrimination and harassment with the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs timely filed the instant action within 90 days of receipt of their right to sue letters from the EEOC.

54.

Aaron's, Inc.'s actions and omissions forcing Plaintiffs to either take unpaid leave and/or to resign or work for the same supervisor who harassed them, thus affecting the terms and conditions of their employment and interfering with their work performance, resulted in the Plaintiffs' constructive discharge.

55.

The aforementioned actions of Williams directed at Plaintiffs were unprovoked, unwanted, unwelcome and based on Plaintiffs' sex. Said actions affected a term, condition and privilege of Plaintiffs' employment.

56.

The aforementioned actions of Williams directed at Plaintiffs resulted in their workplace being permeated with discriminatory intimidation, ridicule and insult that was objectively and sufficiently severe and/or pervasive to alter the conditions of the Plaintiffs' employment and create an abusive work environment.

57.

Plaintiffs' subjectively perceived Williams' conduct to be abusive and unwelcome.

58.

The actions of Williams complained of herein were frequent, severe, pervasive, offensive, physically threatening and/or humiliating. Williams' acts of invasion of privacy were

so severe and pervasive as to even occur in the bathroom, the one place where an individual should have the highest expectation of privacy.

59.

Williams' actions towards Plaintiffs involved unwelcome, forcible physical contact of an intimate nature.

60.

In addition to amounting to actionable harassment and discrimination, Williams' actions amounted to sexual batteries, invasions of privacy and tortious infliction of emotional distress.

61.

Williams created a reasonable fear in Granger and Descant that they would be subject to retaliation if they reported Williams' harassing and discriminatory conduct. Williams created obstacles to the filing of harassment complaints against him and/or rendered any complaint mechanism utilized by Aaron's, Inc. as ineffective

62.

Both Granger and Descant were compelled to resign their employment with Aaron's due to the unendurable working conditions and hostile work environment created by Williams, their direct supervisor. The Plaintiffs' working conditions were so intolerable that a reasonable person in their position would have felt compelled to resign.

63.

Upon information and belief, Aaron's, Inc. does not have in place sufficient policies prohibiting illegal discrimination and harassment in the workplace and/or setting forth a proper procedure to report and prevent such conduct. Alternately, Aaron's, Inc. has failed to properly implement, distribute and communicate such discrimination and harassment policies and procedures to its employees.

64.

Aaron's, Inc. failed to implement and communicate to Plaintiffs and other employees at the Mansura Aaron's an acceptable method and procedure by which they could report illegal employment discrimination and harassment. Aaron's, Inc. failed to train Williams and its other managers and supervisors on the proper methods and procedures for identifying, reporting and preventing illegal discrimination in the workplace.

65.

Upon information and belief, Aaron's, Inc. failed to properly investigate Plaintiffs' and other third parties' various reports of harassing and sexually charged conduct, and it failed to take proper and/or prompt remedial action upon learning of such conduct.

66.

Aaron's, Inc. knew or should have known of the harassment and other illegal conduct present in the Mansura store, including the harassment complained of herein, and it failed to take timely and effective corrective action.

67.

At a minimum, Aaron's, Inc. negligently allowed harassment to take place at the Mansura store and failed to address such conduct once it was notified of same.

68.

Aaron's, Inc.'s actions and omissions prevented Plaintiffs from being able to properly perform their jobs, discouraged Plaintiffs from remaining on the job and kept Plaintiffs from advancing in their careers.

69.

Aaron's, Inc. failed to exercise reasonable care to prevent and promptly correct any harassment occurring in the workplace.

70.

Aaron's, Inc. and Williams engaged in the aforementioned discriminatory practices with malice or reckless indifference to Plaintiffs' federally and state protected rights.

71.

Upon information and belief, reinstatement is not a viable option in determining the damages due Plaintiffs.

72.

The actions and omissions complained of above have resulted in Plaintiffs encountering financial distress and a diminution in their standard of living. Plaintiffs' lost wages, income and benefits have caused them economic duress. Plaintiffs have made reasonable efforts to mitigate their financial damages.

73.

In addition, Plaintiffs have suffered and will continue to suffer emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, inconvenience and damage to reputation as a result of the hostile work environment and actions directed toward them at the Aaron's, Inc. Mansura location, together with all other nonpecuniary losses as may be proved at the trial on the merits.

74.

Aaron's, Inc. should be ordered to pay Plaintiffs all equitable relief allowed under the law, including an award for backpay and benefits and front pay and benefits (in lieu of reinstatement), together with all emotional distress and other compensatory damages, punitive damages, reasonable attorney's fees and all costs incurred in prosecuting this action, all pre-judgment or other legal interest allowed, and all other relief to which Plaintiffs may be entitled.

75.

Plaintiffs have exhausted their administrative remedies.

76.

Plaintiffs request a trial by jury.

WHEREFORE, premises considered, Plaintiffs ANGEL GRANGER and CASEY DIXON DESCANT pray that, after due proceedings had, there be judgment in each of their favor and against Defendant, AARON'S, INC., for all damages available under Title VII, the LEDL and state law, and ordering Defendant to pay Plaintiffs all monetary and equitable relief allowed under the law, including an award for backpay and benefits, front pay and benefits, compensatory damages including all emotional distress, mental anguish, humiliation, embarrassment and other such damages available, punitive damages, reasonable attorney's fees and all court costs and litigation expenses incurred in prosecuting this action, all pre-judgment or other legal interest allowed, and all other relief to which Plaintiffs may be entitled under the law; and

FOR ANY AND ALL OTHER LEGAL AND EQUITABLE RELIEF AS IS JUST.

Respectfully submitted,

BENJAMIN A. LUKE, ATTORNEY AT LAW, LLC

By: _____

BENJAMIN A. LUKE (#23521)
Post Office Box 427
643 North Main Street
Marksville, LA 71351
Telephone: (318) 253-6565
Facsimile: (318) 253-6511

-and-

MICHAEL P. MARAIST (#26985)
MARAIST LAW FIRM, APLC
Suite 810, Chase Tower
600 Jefferson Street
Lafayette, LA 70501
Telephone: (337) 266-2230
Facsimile: (337) 266-2231

ATTORNEYS FOR ANGEL GRANGER
AND CASEY DIXON DESCANT

**Please serve:**

AARON'S, INC.,
through its agent for service,
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

| | |
|---|---|
| ANGEL GRANGER AND<br>CASEY DIXON DESCANT | : 12TH JUDICIAL DISTRICT COURT |
| | : |
| | : DOCKET NO. _____ |
| VERSUS | : |
| | : AVOYELLES PARISH, LOUISIANA |
| AARON'S, INC. | : |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REQUEST FOR NOTICE

TO THE CLERK OF COURT of the 12th Judicial District Court for Avoyelles Parish,

Louisiana:

Please take notice that Michael P. Maraist of the Maraist Law Firm and Benjamin Luke

of Benjamin A. Luke, Attorney at Law, LLC, attorneys for the Plaintiffs, ANGEL GRANGER

and CASEY DIXON DESCANT, do each hereby request written notice of the date of trial of the

above matter as well as notice of hearings (whether on merits or otherwise), orders, judgments,

and interlocutory decrees, and any and all formal steps taken by the parties herein, the Judge or

any member of Court, as provided in Louisiana Code of Civil Procedure of 1960, particularly

Articles 1572, 1913 and 1914.

Respectfully submitted,

BENJAMIN A. LUKE, ATTORNEY AT LAW, LLC

By: _____

BENJAMIN A. LUKE (#23521)
Post Office Box 427
643 North Main Street
Marksville, LA 71351
Telephone: (318) 253-6565
Facsimile: (318) 253-6511

-and-

MICHAEL P. MARAIST (#26985)
MARAIST LAW FIRM, APLC
Suite 810, Chase Tower
600 Jefferson Street
Lafayette, LA 70501
Telephone: (337) 266-2230
Facsimile: (337) 266-2231

ATTORNEYS FOR ANGEL GRANGER
AND CASEY DIXON DESCANT

*ANGEL GRANGER, ET AL*

*Vs.*

*AARON'S, INC.*



Case: 2009-00004052
Division: A
12th Judicial District Court
Parish of Avoyelles
State of Louisiana

To: AARON'S, INC.
    THRU CORPORATION SERVICE CO.
    320 SOMERULOS STREET
    BATON ROUGE, LA

      **YOU ARE HEREBY CITED** to appear in the office of the Clerk of said Court, in the City of Marksville, Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed, or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within FIFTEEN (15) days after the service hereof, under penalty of default.

      *WITNESS* the Honorable **JUDGES** of our said Court on Friday, August 28, 2009.

O/P

Samuel G. Couvillon
*Clerk of Court*

*Deputy Clerk of Court*

*Attorney*
BENJAMIN LUKE

-------------------------------------------------------------

### *SHERIFF'S RETURN*

#### *PERSONAL SERVICE*

*Received the above citation, a certified copy thereof, and a certified copy of the petition*

    **Filed on** _____

    **Date Served** _____

    **In person to** _____

    **Deputy Sheriff** _____

#### *DOMICILIARY SERVICE*

*Received this citation, a certified copy thereof, and a certified copy of the petition*

    **Filed on** _____

    **Date Served** _____

    **Served to** _____
    *A person apparently above the age of sixteen years residing at the said domicile as a member thereof from which, at the time of said service, the above named individual was absent.*

    **Deputy Sheriff** _____

**EXHIBIT**
tabbies®
2

[ FILE COPY ]

*CITATION*

ANGEL GRANGER, ET AL

Vs.

AARON'S, INC.

Case: 2009-00004052
Division: A
12th Judicial District Court
Parish of Avoyelles
State of Louisiana

SEP 11  12 11 PM '09

AVOYELLES PARISH LA.

To: *AARON'S, INC.*
*THRU CORPORATION SERVICE CO.*
*320 SOMERULOS STREET*
*BATON ROUGE, LA*

    **YOU ARE HEREBY CITED** to appear in the office of the Clerk of said Court, in the City of Marksville,

Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed,

or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within

FIFTEEN (15) days after the service hereof, under penalty of default.

    **WITNESS** the Honorable **JUDGES** of our said Court on Friday, August 28, 2009.

O/P

*Attorney*
BENJAMIN LIKE

*Samuel G. Couvillon*
*Clerk of Court*

*Deputy Clerk of Court*

---

**SHERIFF'S RETURN**

**PERSONAL SERVICE**

*Received the above citation, a certified copy thereof, and a certified copy of the petition*

    *Filed on* _____

    *Date Served* _____

    *In person to* _____

    *Deputy Sheriff* _____

**DOMICILIARY SERVICE**

*Received this citation, a certified copy thereof, and a certified copy of the petition*

    *Filed on* _____

    *Date Served* _____

    *Served to* _____
    *A person apparently above the age of sixteen years residing at the said domicile as a member thereof*
    *from which, at the time of said service, the above named individual was absent*

    *Deputy Sheriff* _____

[ RETURN COPY ]

ANGEL GRANGER AND      :    **12TH JUDICIAL DISTRICT COURT**
CASEY DIXON DESCANT      :    FILE NO. _____
                               :    **DOCKET NO.** _____ FILED AND RECORDED
**VERSUS   20094052**      :    **AVOYELLES PARISH, LOUISIANA** A 8: 32

AARON'S, INC.      :
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### PETITION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, ANGEL GRANGER ("Granger") and CASEY DIXON DESCANT ("Descant"), who for complaint against Defendant, AARON'S, INC., respectfully allege as follows:

1.

Plaintiff Granger is an individual of the full age of majority, and a domiciliary and resident of Avoyelles Parish, Louisiana.

2.

Plaintiff Descant is an individual of the full age of majority, and a domiciliary and resident of Avoyelles Parish, Louisiana.

3.

Upon information and belief, Defendant Aaron's, Inc. is a foreign corporation that is currently operating and engaging in interstate commerce in Avoyelles Parish, Louisiana. Aaron's, Inc. owns and operates a business located in Mansura, Louisiana that engages in the sale and rental of furniture, appliances and electronics.

4.

This matter includes sexual harassment and constructive discharge claims brought by Plaintiffs pursuant to Title VII of the 1964 Civil Rights Act, as amended and supplemented, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.*

5.

Aaron's, Inc. is engaged in an industry affecting commerce and has employed fifteen (15) or more employees at all times pertinent herein.

6.

Upon information and belief, Aaron's, Inc. employs and has employed more than fifty (50) employees at all times pertinent herein.

7.

Plaintiff Granger and Plaintiff Descant are both female.



8.

Plaintiff Descant began working as a customer service representative for Aaron's, Inc. in its Mansura location from or about March 8, 2007 until she was forced to resign her employment on or about June 30, 2007.

9.

Plaintiff Granger began working as a customer service representative for Aaron's, Inc. in its Mansura location from or about July 7, 2007 until she was forced to resign her employment on or about September 23, 2007.

10.

At all times pertinent herein, Kennard Williams ("Williams"), was the Store Manager for Aaron's Mansura location. Williams, male, was Granger's and Descant's direct supervisor and the supervisor of all other employees at the Mansura location. Williams had the authority to undertake or recommend tangible employment decisions affecting Granger and Descant and the authority to direct their daily work activities.

11.

Williams engaged in a pattern of deliberate, repeated sexual harassment of both Granger and Descant shortly after each began working for Aaron's until such time each were compelled and had no choice but to resign their employment.

12.

Granger and Descant were subjected to the unwanted and unwelcome harassment of Williams, which conduct was based on their sex, female. Granger's and Descant's reactions to the harassment complained of affected tangible aspects of their terms, conditions and privileges of employment.

13.

Aaron's, Inc. is vicariously liable for the sexually harassing conduct of its supervisors, and in particular, Williams.

14.

Shortly after Plaintiff Descant began working at the Aaron's in Mansura, Williams began pretending to accidentally brush up and graze against Descant, and particularly on her buttocks, on a number of occasions. His physical advances and batteries progressed to the point where Williams would slip his hands up Descant's skirts to her thighs until she would have to get up

and walk away. Williams also grabbed Descant's buttocks and reached beneath Descant's blouse and grabbed her breasts.

15.

Williams would often tell Descant that he liked the way her butt looked in her pants. When Descant wore skirts to work, Williams told her that it was a "turn on" for him. Williams would often accuse Descant of staring at his penis while drawing attention and pointing to his groin area.

16.

Williams told Descant a few times that he knew how to unlock the bathroom door at work from the outside. Williams actually unlocked the bathroom door while Descant was inside what she thought was a locked bathroom.

17.

Descant received an unwanted midnight phone call from Williams one night when he was drinking. When Descant was out on medical leave, Williams would constantly call Descant at home to complain about another female employee at Aaron's.

18.

Williams told Descant multiple times that she reminded Williams of his wife, that Descant was attractive, and that Williams likes women with curves. Williams propositioned Descant for sex on multiple occasions, which she refused each time. Williams told Descant more than once that they could have a sexual relationship with no obligations or disclosures to their significant others.

19.

On several occasions Williams asked Descant for a kiss at the workplace. Williams often would plead for a kiss when Descant refused his advances. After Descant would say no, Williams would tell Descant, "I'm not your friend no more."

20.

Williams would often take Descant's and another female employee's cell phones without their permission and go through their phone numbers, read their text messages and look through their pictures. Williams would often forward personal items and information from Descant's and the other employee's cell phones to his personal cell phone without their permission and/or Williams would forward items to their cell phones from his personal cell phone.

21.

Williams would often tell Descant about his frequent visits to strip clubs, including visits Williams took with Damon Knapp, his supervisor at Aaron's. Williams would talk about various women that he had sexual relations with to Descant. Williams would discuss the purported sexual activities of another Aaron's female employee in front of Descant. Descant did not desire to be part of any such sexually-charged conversations.

22.

On several occasions at work Williams asked Descant to sit on his lap. Descant would refuse the advances and remind Williams that he had a wife and children and that Descant was engaged. Williams often told Descant that it did not matter and that no one else had to know.

23.

Descant discussed Williams' attempts to kiss her with Jasmine Furlow, an Aaron's Sales Manager. Furlow indicated that Williams has tried the same conduct with her and simply told Descant that Descant herself should put a stop to it. Williams found out about Descant's conversation with Furlow and made a joke of it to Descant, telling her in a joking manner "You better put an end to this right now."

24.

Although Descant wanted to report Williams for sexual harassment, Williams told her in the past that someone tried to report him for harassment before and she wound up losing her job while Williams kept his job. Descant was fearful of retaliation if she filed a report of harassment against Williams.

25.

After returning one day from a supervisor's conference, Williams mentioned to Descant that the conference "harped on sexual harassment" and he was told that it was not considered harassment unless the person being victimized acknowledged there was a problem. Descant told Williams, "There is a problem. Consider yourself acknowledged."

26.

After Descant made the statement to Williams, Williams began making comments to Descant that she was not fun anymore and that she was "so serious." Williams also berated and cursed Descant upon her return to the store from helping a customer with a problem. Williams'

treatment of Descant changed for the worse after Williams' statement above. Descant's work environment became so unbearable that she had no choice but to resign.

27.

During Plaintiff Granger's employment with Aaron's, Inc., Williams, who is married, would often tell Granger about his "girlfriends" and how he would give a girlfriend in particular money to pay for bills and take care of her child. Williams told Granger that he was the lady's "sugar daddy."

28.

Williams would often describe his visits to strip clubs to Granger, including visits Williams took to strip clubs with his own supervisor, Damon Knapp. Williams would talk about various women with whom he had sexual relations to Descant. Williams would discuss the purported sexual activities of another Aaron's female employee in front of Descant. Granger did not desire to be part of any such sexually-charged conversations.

29.

Williams would often make sexual comments to Granger about her body and tell her that her butt looked good in her pants. He would ask to touch Granger's buttocks, to which she would refuse. Williams eventually began touching Granger inappropriately, which touching later turned into groping and grabbing. All such comments and actions were unwelcomed by Granger.

30.

Williams thereafter began to pass Granger and run his hand over her buttocks. Williams would tell Granger that she was sexy, and would often ask her if she was a "freak," meaning a "freak" in a sexual manner. Williams would often ask Granger if she would sleep with him for money. Williams would often ask Granger to go to strip clubs and to dinner with him. Granger always refused Williams' requests.

31.

Williams would ask Granger if she would ever consider sleeping with a "black man." Williams is an African-American.

32.

Williams told Granger that he knew how to unlock the bathroom door at work from the outside. Williams actually unlocked the bathroom door while Granger was inside what she thought was a locked bathroom.

33.

Williams would often take Granger's cell phone without her permission and look through her messages and pictures. Williams would often forward items from Granger's phone to his phone without her permission, including personal messages Granger received from her boyfriend.

34.

Williams would often call Granger degrading names such as "cum licker." Williams would often ask Granger if he could "lick it." Williams would often walk behind Granger and tell her she has a "sexy ass" and he would ask Granger to "twist it."

35.

Williams indicated to Granger that if she had a sexual relationship with him, there would be no strings attached and he could help her financially. Williams separately promised Granger that he could make her a sales manager at Aaron's.

36.

One day at the workplace, Williams pulled Granger's shirt open with his hand and looked down her shirt and at her breasts.

37.

That day, Granger reported Williams' action in pulling open her shirt to Luke Weatherford, another Aaron's manager. Weatherford responded to Granger that Williams had been in trouble with Aaron's before for a similar incident and that Williams revealed his "private" to another female employee who worked at Aaron's prior to Granger.

38.

On another occasion, Weatherford also informed Granger that Williams and another female employee once had sex in the bathroom at Aaron's Mansura location. The employee was thereafter transferred to another location while Williams remained at the Mansura location.

39.

One day at work, Williams made Granger stick her arms out so he could take a picture of her. Williams told Granger he was sending the picture to his wife to show her how Granger was skinny.

40.

While in front of Granger and laughing at Granger, Williams made a comment to Don Normand, an Aaron's employee, male, that he should "look how small her [Granger's] boobs are."

41.

After teasing, groping and/or harassing Granger, Williams would often ask her if she wanted the number to the company's harassment hotline or to Damon Knapp, his supervisor. Mr. Knapp is the same supervisor with whom Williams told Granger he frequented strip clubs, and is a personal friend of Williams.

42.

After Granger repeatedly denied Williams' requests to be his "girlfriend," Williams began asking Granger if she could "hook him up" with any of her friends generally, and certain of Granger's friends in particular. After Granger denied these requests as well, Williams took Granger's cell phone without her permission and obtained the phone numbers of a number of Granger's female friends.

43.

Without Granger's knowledge, Williams went so far as to call two of Granger's friends from the numbers Williams misappropriated from Granger's cell phone. Williams asked both of Granger's female friends if they would go out on a date with him. Williams asked one of the women, who was also applying for a job at Aaron's, Inc. at the time, if he could be her "baby's daddy."

44.

Williams asked Granger whether sleeping with a supervisor was a fantasy of hers, and told Granger about an affair he had with a supervisor of his in the military.

45.

On a number of occasions Williams attempted to call Granger on her cell phone at inappropriate hours during the night and weekends, sometimes leaving voicemails for Granger.

46.

By the time Granger felt compelled to take a leave and resign her employment, Williams' touching of Granger had turned into groping and grabbing, and he was touching Granger in an inappropriate manner or making inappropriate sexual comments to her on an almost daily basis.

47.

Williams has subjected other female employees at Aaron's, Inc. to similar harassing conduct as that complained of herein. Aaron's has continually refused to take appropriate actions to prevent Williams from engaging in further acts of discrimination and harassment in the workplace.

48.

After Granger continually rebuffed and rejected Williams' advances and sexual propositions, Williams began treating Williams in a negative manner, treated Granger like a child in front of others and berated Granger in front of her co-workers in a company meeting. Williams gave Granger one or more negative write-ups in retaliation for Granger complaining of his conduct. Williams required that Granger carry a heavy television when there were other available employees more suited to perform the task.

49.

Williams told Granger that another female employee tried to report him for sexual harassment in the past, and that the female employee wound up losing her job while Williams kept his job. Granger did not feel that she could go to Damon Knapp, Williams' supervisor, with her complaints of Williams' harassing conduct in light of the nature of the personal relationship and friendship between Knapp and Williams.

50.

After Granger could no longer take William's harassment and obscene conduct, Granger called Aaron's "harassment hotline" and left a message. About a week after Granger lodged a complaint against Williams, representatives of Aaron's called Granger to tell her that they found no evidence of Granger's complaints. Granger was told that she could return to work, but only under the supervision of Williams. The only other option given to Granger was for her to transfer to another store in another town and parish, away from her family and boyfriend. At this point Granger had no option but to resign her employment with Aaron's, Inc.

51.

Williams' actions were physically threatening, humiliating, degrading and offensive to Plaintiffs. His actions and comments, together with Aaron's, Inc.'s failure to address improper conduct in the workplace, have unreasonably interfered with Plaintiffs' work performance and/or undermined Plaintiffs' workplace competence.

52.

Aaron's, Inc.'s actions and omissions caused Plaintiffs severe emotional distress, humiliation, embarrassment, anxiety and/or depression.

53.

Plaintiffs timely filed complaints of employment discrimination and harassment with the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs timely filed the instant action within 90 days of receipt of their right to sue letters from the EEOC.

54.

Aaron's, Inc.'s actions and omissions forcing Plaintiffs to either take unpaid leave and/or to resign or work for the same supervisor who harassed them, thus affecting the terms and conditions of their employment and interfering with their work performance, resulted in the Plaintiffs' constructive discharge.

55.

The aforementioned actions of Williams directed at Plaintiffs were unprovoked, unwanted, unwelcome and based on Plaintiffs' sex. Said actions affected a term, condition and privilege of Plaintiffs' employment.

56.

The aforementioned actions of Williams directed at Plaintiffs resulted in their workplace being permeated with discriminatory intimidation, ridicule and insult that was objectively and sufficiently severe and/or pervasive to alter the conditions of the Plaintiffs' employment and create an abusive work environment.

57.

Plaintiffs' subjectively perceived Williams' conduct to be abusive and unwelcome.

58.

The actions of Williams complained of herein were frequent, severe, pervasive, offensive, physically threatening and/or humiliating. Williams' acts of invasion of privacy were

so severe and pervasive as to even occur in the bathroom, the one place where an individual should have the highest expectation of privacy.

59.

Williams' actions towards Plaintiffs involved unwelcome, forcible physical contact of an intimate nature.

60.

In addition to amounting to actionable harassment and discrimination, Williams' actions amounted to sexual batteries, invasions of privacy and tortious infliction of emotional distress.

61.

Williams created a reasonable fear in Granger and Descant that they would be subject to retaliation if they reported Williams' harassing and discriminatory conduct. Williams created obstacles to the filing of harassment complaints against him and/or rendered any complaint mechanism utilized by Aaron's, Inc. as ineffective

62.

Both Granger and Descant were compelled to resign their employment with Aaron's due to the unendurable working conditions and hostile work environment created by Williams, their direct supervisor. The Plaintiffs' working conditions were so intolerable that a reasonable person in their position would have felt compelled to resign.

63.

Upon information and belief, Aaron's, Inc. does not have in place sufficient policies prohibiting illegal discrimination and harassment in the workplace and/or setting forth a proper procedure to report and prevent such conduct. Alternately, Aaron's, Inc. has failed to properly implement, distribute and communicate such discrimination and harassment policies and procedures to its employees.

64.

Aaron's, Inc. failed to implement and communicate to Plaintiffs and other employees at the Mansura Aaron's an acceptable method and procedure by which they could report illegal employment discrimination and harassment. Aaron's, Inc. failed to train Williams and its other managers and supervisors on the proper methods and procedures for identifying, reporting and preventing illegal discrimination in the workplace.

65.

Upon information and belief, Aaron's, Inc. failed to properly investigate Plaintiffs' and other third parties' various reports of harassing and sexually charged conduct, and it failed to take proper and/or prompt remedial action upon learning of such conduct.

66.

Aaron's, Inc. knew or should have known of the harassment and other illegal conduct present in the Mansura store, including the harassment complained of herein, and it failed to take timely and effective corrective action.

67.

At a minimum, Aaron's, Inc. negligently allowed harassment to take place at the Mansura store and failed to address such conduct once it was notified of same.

68.

Aaron's, Inc.'s actions and omissions prevented Plaintiffs from being able to properly perform their jobs, discouraged Plaintiffs from remaining on the job and kept Plaintiffs from advancing in their careers.

69.

Aaron's, Inc. failed to exercise reasonable care to prevent and promptly correct any harassment occurring in the workplace.

70.

Aaron's, Inc. and Williams engaged in the aforementioned discriminatory practices with malice or reckless indifference to Plaintiffs' federally and state protected rights.

71.

Upon information and belief, reinstatement is not a viable option in determining the damages due Plaintiffs.

72.

The actions and omissions complained of above have resulted in Plaintiffs encountering financial distress and a diminution in their standard of living. Plaintiffs' lost wages, income and benefits have caused them economic duress. Plaintiffs have made reasonable efforts to mitigate their financial damages.

73.

In addition, Plaintiffs have suffered and will continue to suffer emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, inconvenience and damage to reputation as a result of the hostile work environment and actions directed toward them at the Aaron's, Inc. Mansura location, together with all other nonpecuniary losses as may be proved at the trial on the merits.

74.

Aaron's, Inc. should be ordered to pay Plaintiffs all equitable relief allowed under the law, including an award for backpay and benefits and front pay and benefits (in lieu of reinstatement), together with all emotional distress and other compensatory damages, punitive damages, reasonable attorney's fees and all costs incurred in prosecuting this action, all pre-judgment or other legal interest allowed, and all other relief to which Plaintiffs may be entitled.

75.

Plaintiffs have exhausted their administrative remedies.

76.

Plaintiffs request a trial by jury.

WHEREFORE, premises considered, Plaintiffs ANGEL GRANGER and CASEY DIXON DESCANT pray that, after due proceedings had, there be judgment in each of their favor and against Defendant, AARON'S, INC., for all damages available under Title VII, the LEDL and state law, and ordering Defendant to pay Plaintiffs all monetary and equitable relief allowed under the law, including an award for backpay and benefits, front pay and benefits, compensatory damages including all emotional distress, mental anguish, humiliation, embarrassment and other such damages available, punitive damages, reasonable attorney's fees and all court costs and litigation expenses incurred in prosecuting this action, all pre-judgment or other legal interest allowed, and all other relief to which Plaintiffs may be entitled under the law; and

FOR ANY AND ALL OTHER LEGAL AND EQUITABLE RELIEF AS IS JUST.

Respectfully submitted,

BENJAMIN A. LUKE, ATTORNEY AT LAW, LLC

By: _____

  BENJAMIN A. LUKE (#23521)
  Post Office Box 427
  643 North Main Street
  Marksville, LA 71351
  Telephone: (318) 253-6565
  Facsimile: (318) 253-6511

-and-

MICHAEL P. MARAIST (#26985)
MARAIST LAW FIRM, APLC
Suite 810, Chase Tower
600 Jefferson Street
Lafayette, LA 70501
Telephone: (337) 266-2230
Facsimile: (337) 266-2231

ATTORNEYS FOR ANGEL GRANGER
AND CASEY DIXON DESCANT

**Please serve:**

AARON'S, INC.,
through its agent for service,
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

| ANGEL GRANGER AND | : | 12TH JUDICIAL DISTRICT COURT |
| CASEY DIXON DESCANT | : | |
| | : | DOCKET NO. _____ |
| VERSUS | : | |
| | : | AVOYELLES PARISH, LOUISIANA |
| AARON'S, INC. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REQUEST FOR NOTICE

TO THE CLERK OF COURT of the 12th Judicial District Court for Avoyelles Parish,

Louisiana:

Please take notice that Michael P. Maraist of the Maraist Law Firm and Benjamin Luke

of Benjamin A. Luke, Attorney at Law, LLC, attorneys for the Plaintiffs, ANGEL GRANGER

and CASEY DIXON DESCANT, do each hereby request written notice of the date of trial of the

above matter as well as notice of hearings (whether on merits or otherwise), orders, judgments,

and interlocutory decrees, and any and all formal steps taken by the parties herein, the Judge or

any member of Court, as provided in Louisiana Code of Civil Procedure of 1960, particularly

Articles 1572, 1913 and 1914.

Respectfully submitted,

BENJAMIN A. LUKE, ATTORNEY AT LAW, LLC

By: _____

BENJAMIN A. LUKE (#23521)
Post Office Box 427
643 North Main Street
Marksville, LA 71351
Telephone: (318) 253-6565
Facsimile: (318) 253-6511

-and-

MICHAEL P. MARAIST (#26985)
MARAIST LAW FIRM, APLC
Suite 810, Chase Tower
600 Jefferson Street
Lafayette, LA 70501
Telephone: (337) 266-2230
Facsimile: (337) 266-2231

ATTORNEYS FOR ANGEL GRANGER
AND CASEY DIXON DESCANT

*ANGEL GRANGER, ET AL*

*Vs.*

*AARON'S, INC.*



Case: 2009-00004052
Division: A
12th Judicial District Court
Parish of Avoyelles
State of Louisiana

To:  AARON'S, INC.
     THRU CORPORATION SERVICE CO.
     320 SOMERULOS STREET
     BATON ROUGE, LA

      **YOU ARE HEREBY CITED** *to appear in the office of the Clerk of said Court, in the City of Marksville, Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed, or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within* FIFTEEN (15) *days after the service hereof, under penalty of default.*

      *WITNESS the Honorable* **JUDGES** *of our said Court on Friday, August 28, 2009.*

                                Samuel G. Couvillon
                                Clerk of Court

O/P

                                Deputy Clerk of Court

Attorney
BENJAMIN LUKE

--------------------------------------------------------------------

### SHERIFF'S RETURN

#### PERSONAL SERVICE

*Received the above citation, a certified copy thereof, and a certified copy of the petition*

    **Filed on** _____

    **Date Served** _____

    **In person to** _____

    **Deputy Sheriff** _____

#### DOMICILIARY SERVICE

*Received this citation, a certified copy thereof, and a certified copy of the petition*

    **Filed on** _____

    **Date Served** _____

    **Served to** _____
    *A person apparently above the age of sixteen years residing at the said domicile as a member thereof from which, at the time of said service, the above named individual was absent.*

    **Deputy Sheriff** _____

ANGEL GRANGER, ET AL

Vs.

AARON'S, INC.

FILE NO

Case: 2009-00004052
Division: A
12th Judicial District Court
Parish of Avoyelles
State of Louisiana

SEP 11  12 11 PM

AVOYELLES PARISH LA.

To: AARON'S, INC.
THRU CORPORATION SERVICE CO.
320 SOMERULOS STREET
BATON ROUGE, LA

     **YOU ARE HEREBY CITED** to appear in the office of the Clerk of said Court, in the City of Marksville,

Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed,

or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within

FIFTEEN (15) days after the service hereof, under penalty of default.

     **WITNESS the Honorable JUDGES** of our said Court on Friday, August 28, 2009.

O/P

Attorney
BENJAMIN LIKE

SEP 03 2009

Made service on the named party through the Corporation Services by tendering a copy of this document to JEANNINE SCHUT Deputy, Parish of East Baton Rouge, Louisiana

Samuel G. Couvillon
Clerk of Court

_____
Deputy Clerk of Court

---

**SHERIFF'S RETURN**

**PERSONAL SERVICE**

Received the above citation, a certified copy thereof, and a certified copy of the petition

    **Filed on** _____

    **Date Served** _____

    **In person to** _____

    **Deputy Sheriff** _____

**DOMICILIARY SERVICE**

Received this citation, a certified copy thereof, and a certified copy of the petition

    **Filed on** _____

    **Date Served** _____

    **Served to** _____
    A person apparently above the age of sixteen years residing at the said domicile as a member thereof
    from which, at the time of said service, the above named individual was absent

    **Deputy Sheriff** _____

E.B.R. SHERIFF'S OFFICE
RECEIVED SEP 0 2009